BC

FILED
13th JUDICIAL DISTRICT COURT
Valencia County
2/19/2021 3:23 PM
PHILLIP ROMERO
CLERK OF THE COURT

STATE OF NEW MEXICO
COUNTY OF VALENCIA
THIRTEENTH JUDICIAL DISTRICT COURT

ALAN BACA,

       Plaintiff,

v.                                   No:  D-1314-CV-2021-00147

THE BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF VALENCIA,
COUNTY OF VALENCIA,
VALENCIA COUNTY SHERIFF'S DEPARTMENT,
VALENCIA COUNTY DETENTION CENTER,
VALENCIA MANAGER'S OFFICE,
CUSTODIAN OF PUBLIC RECORDS,
ANGIE WOMACK, DANNY MONETTE,
RANDY GUTIERREZ, OFFICER
ZAMORA, WARDEN CHAVEZ, MAJOR GUITERREZ,
CAPTAIN GARCIA, CAPTAIN TRUJILLO,
CAPTAIN BARELA, SERGEANT VAISA,
SERGEANT TENA, SERGEANT SANDOVAL,
SERGEANT GONZALES, OFFICER JOJOLA,
OFFICER SAIS, OFFICER HOLGUIN,
OFFICER GALINDO, OFFICER SOTO,
OFFICER HOBBS, OFFICER LAZOYA,
OFFICER VALLARDEZ, OFFICER NAVARRO, OFFICER CRISPIN,
OFFICER HENSON, OFFICER BROUANDA,
OFFICER BORUNDA, OFFICER CASTILLO,
OFFICER ROBINSON, OFFICER ARMIJO,
OFFICER ORTIZ, OFFICER DURAN, OFFICER CASTILLO,
OFFICER ORTIZ, OFFICER BARRERAS,
OFFICER ALFERO, OFFICER PEREA,
OFFICER MARTINEZ, OFFICER ESPINDOLA,
OFFICER ESPODOLA, OFFICER GONZALES,
OFFICER OTERO, OFFICER ROMERO, OFFICER GOMEZ,
DANIEL TRUJILLO, OFFICER ANTHONY OTERO

and "JOHN DOES",

       Defendants.

## COMPLAINT FOR EXCESSIVE USE OF FORCE, ASSAULT AND BATTERY, INTENTIONAL SPOLIATION OF EVIDENCE, NEGLIGENT SPOLIATION OF EVIDENCE, AND VIOLATION OF CONSTITUTIONAL RIGHTS

COMES NOW, Plaintiff Alan Baca, complains of Defendants The Board of County Commissioners of the County of Valencia ("Commissioners" herein), County of Valencia ("County" herein), Valencia County Sheriff's Department ("Sheriff's Department" herein), Valencia County Detention Center, aka "Valencia County Adult Detention Center", aka "Valencia County Detention Department" ("Detention Center" herein), Valencia Manager's Office ("Manager's Office" herein), Custodian of Public Records ("Custodian" herein), Angie Womack ("Angie Womack" herein), Danny Monette ("Danny Monette" herein), Randy Gutierrez ("Randy Gutierrez" herein); and

Officers/employees of the Detention Center and/or Deputies/employees of the Sheriff's Department who were involved in the use of excessive force, assault and/or battery during Plaintiff's incarnation at the Detention Center from December 17, 2018 through December 19, 2018 as further alleged below, believed to include: Defendants Officer Zamora, Warden Chavez, Major Gutierrez, Captain Garcia, Captain Trujillo, Captain Barela, Sergeant Vaisa, Sergeant Tena, Sergeant Sandoval, Sergeant Gonzales, Officer Jojola, Sergeant Sais, Officer Holguin, Officer Galindo, Officer Soto, Offer Hobbs, Officer Lazoya, Officer Vallardez, Officer Navarro, Officer Crispin, Officer Henson, Officer Brouanda, Officer Borunda, Officer Castillo, Officer Robinson, Officer Armijo, Officer Ortiz, Officer Duran, Officer Castillo, Officer Ortiz (II), Officer Barreras, Officer Alfero, Officer Perea, Officer Martinez, Officer Espindola, Officer Espodola, Officer Gonzales, Officer Otero, Officer Romero, Officer Gomez, Daniel Trujillo, Officer Anthony Otero (collectively "County Employees"); and

John Doe Defendants ("John Does" herein), who refer to any and all entities and/or persons who have any liability for the attacks on Plaintiff as detailed in the allegations herein, and any and all entities and persons who have any liability for the failure to preserve, the loss or destruction, and/or failure to produce evidence as also detained in the allegations herein.

## BACKGROUND

1.      This lawsuit arises out of an unprovoked and unjustified use of excessive force by guards/employees of the Valencia County Detention Center, who assaulted and battered Plaintiff while he was in the custody of the Valencia County Detention Center, resulting in serious physical and emotional injuries to Plaintiff.

2.      This lawsuit also arises from the intentional or (alternatively) negligent loss of video surveillance and possibly other evidence from the Detention Center which would have shown the use of excessive force, assault and battery complained of herein. Despite Plaintiff's timely notice to preserve such evidence, and several requests to produce such evidence, no video surveillance or other recordings were ever produced.

3.      On or about December 17, 2018, Plaintiff requested that the Sheriff's Department serve a Three-Day Notice as contemplated by the New Mexico Owner-Resident Relations Act on Plaintiff's daughter, who was living in Plaintiff's home ("Property" herein) as a tenant based on nonpayment of rent.

4.      The Sheriff's Department represented to Plaintiff that they do not serve Three-Day Notices.

5.      As such, Plaintiff went to the Property to serve the Three-Day notice himself.

6.      When he arrived on the Property, Plaintiff was threatened by a male occupant, which prompted Plaintiff to call 911.

7.      Deputies from the Sheriff's Department arrived at the Property shortly thereafter.

8.      When Deputies arrived, they interviewed Plaintiff and his daughter separately.

9.      To the best of Plaintiff's knowledge and belief, Plaintiff's daughter informed Deputies that she was scared of Plaintiff.

10.     Thereafter, Deputies claimed they interpreted certain behavior by Plaintiff as aggressive, which resulted in allegations of criminal misconduct being alleged against Plaintiff, none of which resulted in any convictions.

11.     Plaintiff was taken into custody by the Sheriff's Department and transported to the Detention Center, where he was confined starting on December 17, 2018.

12.     After being booked into the Detention Center, Plaintiff was directed by Detention Center employees to a "back area" to retrieve toiletries and a mattress.

13.     While in the back area, Plaintiff was approached by a Detention Center guard/employee. Without provocation or warning, the guard/employee attempted to punch Plaintiff, but missed. Plaintiff retreated from the guard/employee and asked whether he had done something wrong. At that time, a second guard/employee of the Detention Center entered the area, and both commenced to use excessive force against Plaintiff by knocking Plaintiff to the ground, causing serious injury to Plaintiff's head.

14.     After the first use of excessive force, Plaintiff was taken to a cell, where he was subjected to the use of excessive force for a second time by Detention Center guards/employees.

15.     Plaintiff was released from the custody of the Detention Center on or about December 19, 2018.

16.     On February 13, 2019, Plaintiff delivered an IPRA request to Valencia County. See **Exhibit 1** hereto.

17.     Plaintiff's February 13, 2019 IPRA request sought, among other things:

[A]ll Valencia County Detention Center photographs, video and/or audio recordings – including but not limited to belt tapes, body cameras, facility surveillance cameras – related to an altercation involving Alan Baca and employees of the Valencia County Detention Center which occurred on or about December 17-19, 2018.

18.     On or about February 15, 2019, Randy Gutierrez authored a Memorandum on behalf of the Detention Center, stating: "We do not have any recordings, audio or incidents with the name above [incorrectly referring to 'Allan Baca']. He was booked into custody on the 17th of December and was released the 19th of December with no incidents." See **Exhibit 2** hereto.

19.     On March 15, 2019, Plaintiff delivered a Tort Claims Notice Regarding Alan Richard Baca, which specified Plaintiff's date of birth. See **Exhibit 3** hereto (with Plaintiff's date of birth redacted).

20.     The March 15, 2019, Tort Claims Notice provides details about the use of excessive force against Plaintiff while he was in the custody of the Detention Center, and expressly gave notice of the duty to preserve all records related to the Detention Center incident, including as follows:

In addition to serving as a tort claims notice under § 41-4-1 et. seq., this letter also serves as a notice to **preserve all records, as they existed at the time of the incident**, including, but not limited to: . . . videotapes . . . The destruction of any of the above items will result in our pursuing a case against Valencia County and the Valencia County Detention Center based upon spoliation of evidence.

**Exhibit 3.**

21.     On March 29, 2019, in follow up to Plaintiff's February 13, 2019 IPRA request, Plaintiff sent another IPRA request, which reads in pertinent part:

Produce all Valencia County Detention Center facility surveillance between the time that Alan Baca [Date of Birth omitted] was booked into the detention center on December 17, 2018, through December 18, 2018 . . .

See **Exhibit 4** hereto.

22.     Importantly, the March 29, 2019 IPRA request was in direct response to the February 15, 2019 Memorandum (**Exhibit 2**) which claimed there were no recordings or audio of any incidents. The March 29. 2019 IPRA request specifically omitted any reference to an alleged altercation, broadly requesting all facility surveillance from December 17 to December 19, 2018. See **Exhibit 4**.

23.     The intent and purpose of the March 29, 2019 IPRA request was to obtain all surveillance recordings from the Detention Center for the time period specified.

24.     In an email dated April 3, 2019, Angie Womack inquired whether the March 29, 2019 IPRA request was a second request for information that had previously been produced in response to the February 13, 2019 IPRA request. See referenced emails, collectively attached as **Exhibit 5** hereto.

25.     On April 4, 2019, Plaintiff, through his attorney, responded that the March 29, 2019 IPRA request was not the same as the February 13, 2019 IPRA request, and clarified the broader intent of the March 29, 2019 IPRA request, writing: "Our request dated 3/29/19 is for facility surveillance and detention center employee shift logs related to a certain time frame." **Exhibit 5**.

26.     On April 4, 2019, Angie Womack replied by email, writing: "I will check to make sure *I still have video saved. . . .*" **Exhibit 5** (emphasis added).

27.     Despite the acknowledgement that there video at one time, and that Angie Womack was going to check to make sure the video was *still saved*, as of the date of this Complaint, no video has been produced in response to either the February 13, 2019 or the March 29, 2019 IPRA requests.

28.     As of the date of this Complaint, no objections, denials, requests for extension, or explanations have been made or given with regard to either the February 13, 2019 or the March 29, 2019 IPRA requests.

29.     On October 23, 2019, Plaintiff delivered a third IPRA request. Plaintiff's October 23, 2019 IPRA request states in pertinent part: "I am requesting all records, recording, any information pertaining to my aresst [sic], all audio[,] video Dec. 17/18 – Dec. 19/18. See **Exhibit 6**.[1]

30.     On October 23, 2019, Angie Womack, on behalf of Danny Monette, the Custodian of Public Records, acknowledged receipt of Plaintiff's October 23, 2019 IPRA request. See **Exhibit 7**.

31.     As of the date this Complaint, no video has been produced in response to Plaintiff's October 23, 2019 IPRA request.

32.     As of the date of this Complaint, no objections, denials, requests for extension, or explanations have been made or given with regard to Plaintiff's October 23, 2019 IPRA request.

33.     On or about December 11, 2020, Plaintiff was told by Angie Womack that Plaintiff had not previously requested any surveillance video from the Detention Center, but that she would check to see if any had been saved on her system.

34.     Later, on December 11, 2020, Angie Womack acknowledged that Plaintiff had in fact requested surveillance video from the Detention Center, but reported to Plaintiff that the video that had existed was destroyed three months earlier (Plaintiff assumes in or around September of 2020).

---

[1] **Exhibit 6** also included Plaintiff's date of birth, which has been redacted from the attached **Exhibit**.

35.     The video Plaintiff requested multiple times, and which Plaintiff specifically requested be preserved, is evidence which would have been critically important in the direct proof of Plaintiff's excessive use of force claim, which Plaintiff is filing separately.

### PARTIES AND VENUE

36.     All allegations are hereby incorporated as if fully set forth herein.

37.     At the time this Complaint is filed, Plaintiff is a resident of Bernalillo County, New Mexico.

38.     On information and belief, the Board of Commissioners acts on behalf of the County, and is a real party in interest in claims such as are at issue here against the County.

39.     On information and belief, the County is responsible for the operation and management of the Detention Center and its employees, and exercises control over the Detention Center and its employees, and is responsible for creating, preserving and producing information sought by Plaintiff through his IPRA requests.

40.      On information and belief, the Sheriff's Department is or may be responsible for staffing the Detention Center, and exercises control over the Detention Center and its employees, and is responsible for creating, preserving and producing information sought by Plaintiff through his IPRA requests.

41.     On information and belief, the Detention Center is directly responsible for the acts and omissions complained of herein, and of its employees, and is responsible for creating, preserving and producing information sought by Plaintiff through his IPRA requests.

42.     On information and belief, the Manager's Office employs Angie Womack and possibly Danny Monette, and is responsible for complying with IPRA, and for preserving and producing information sought by Plaintiff through his IPRA requests.

43.     On information and belief, the Custodian of Public Records employs Danny Monette and possibly Angie Womack, and is responsible for complying with IPRA, and for preserving and producing information sought by Plaintiff through his IPRA requests.

44.     On information and belief, Angie Womack is a resident of Valencia County, New Mexico, and is responsible for complying with IPRA, and for preserving and producing information sought by Plaintiff through his IPRA requests.

45.     On information and belief, Danny Monette is a resident of Valencia County, New Mexico, and is responsible for complying with IPRA, and for preserving and producing information sought by Plaintiff through his IPRA requests.

46.     On information and belief, Randy Gutierrez is a resident of Valencia County, New Mexico, is an employee of the County and/or the Detention Center, and is responsible for complying with IPRA, and for preserving and producing information sought by Plaintiff through his IPRA requests.

47.     "County Employees" are Officers/employees of the Detention Center and/or Deputies/employees of the Sheriff's Department who were present at the Detention Center from December 17, 2018 through December 19, 2018; all are law enforcement officers; all acted under color of law during all times pertinent to the allegations herein; all were in the course and scope of their employment during all times pertinent to the allegations herein; and all are believed to be citizens of the State of New Mexico and likely reside in Valencia or surrounding Counties of the State of New Mexico.

48.     John Does represent those identified above.

49.     This Court has general subject matter jurisdiction.

50.     This Court has personal jurisdiction over all parties named in this lawsuit.

51.      Venue is proper in this Court.

## COUNT I – LIABILITY FOR PERSONAL INJURY/BODILY INJURY AS CONTEMPLATED BY THE NEW MEXICO TORT CLAIMS ACT

52.      All allegations are hereby incorporated as if fully set forth herein.

53.      This count arises from personal injuries and/or bodily injuries Plaintiff sustained while he was in the custody of the Detention Center as contemplated by the New Mexico Tort Claims Act ("TCA") under NMSA 1978, § 41-4-12, and (or alternatively) § 41-4-6.

54.      As contemplated by NMSA 1978, § 41-4-16, Plaintiff sent a timely notice of his intent to pursue claims under the New Mexico Tort Claims Act ("TCA").

55.      Defendants also had actual notice of the occurrences alleged herein.

56.      From December 17, 2018 through December 19, 2018, Plaintiff was in the custody of the Detention Center.

57.      While in the custody of the Detention Center, Plaintiff was subjected to the use of excessive force, assault and battery.

58.      The individuals who attacked Plaintiff were wearing uniforms. As such, on information and belief, the individuals who attacked Plaintiff were Officers/Deputies/employees of the Detention Center and/or Sheriff's Department (referred to herein as "County Employees")

59.      Other County Employees failed to stop the unprovoked and unjustified excessive use of force against Plaintiff.

60.      There were two separate attacks – the first was in the "back area", the second was in a cell Plaintiff was taken to after the first attack.

61.      In the first attack, Plaintiff was knocked to the ground by two County Employees, causing Plaintiff to suffer a serious head injury. Plaintiff has also suffered severe mental and emotional distress and injuries as a result of these attacks.

62.     Defendants are liable for damages suffered by Plaintiff as a result of Defendants' use of excessive force, battery and assault.

### COUNT II - SECTION 1983 CLAIM FOR USE OF EXCESSIVE FORCE

63.     All allegations are hereby incorporated as if fully set forth herein.

64.     As described above, while Plaintiff was incarcerated, County Employees used excessive force against Plaintiff without provocation and without legitimate penal justification.

65.     Other County Employees failed to stop the unprovoked and unjustified excessive use of force against Plaintiff.

66.     The actions of the County Employees were performed under color of law and violated Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

67.     Defendants were on notice that the use of excessive force, and/or the failure to prevent the use of excessive force against Plaintiff, while Plaintiff was incarcerated at the Detention Center from December 17, 2018 through December 19, 2018, constitutes a deprivation of Plaintiff's Constitutional rights.

68.     The use of excessive force against Plaintiff was the cause of serious and ongoing physical and psychological injuries to Plaintiff.

69.     The conduct of County Employees was willful and exhibited a flagrant disregard for Plaintiff's federally secured due process rights. Accordingly, these County Employees are liable to Plaintiff under 42 U.S.C. § 1983.

### COUNT III – INTENTIONAL SPOLIATION OF EVIDENCE

70.     All allegations are hereby incorporated as if fully set forth herein.

71.     Defendants had a duty to preserve and produce the video surveillance and any other recordings, taken at the Detention Center from December 17, 2018 through December 19, 2018. See, generally, TCA.

72.     NMSA § 41-4-12 expressly recognizes waiver of sovereign immunity for claims of intentional and negligent spoliation.

73.     NMSA §§ 41-4-6 and 41-4-12 also recognize a waiver of sovereign immunity for property damage and violation of property rights.

74.     On February 13, 2019, Defendants were expressly informed of Plaintiff's request for such evidence and knew, or should have known, that the purpose of Plaintiff's request was to seek evidence in support of his claims that he was attacked at the Detention Center.

75.     On March 15, 2019, Defendants were informed in writing of their duty to preserve all records, including videotapes, related to Plaintiff's incarceration at the Detention Center.

76.     One of the express purposes of the March 15, 2019 notice was to preserve evidence in anticipation of Plaintiff's claims for injuries he suffered while in the custody of the Detention Center.

77.     The March 15, 2019 notice further informed Defendants that the failure to preserve such evidence would result in claims for spoliation of evidence.

78.     On March 29, 2019, a request was made in writing for all video surveillance from the Detention Center from December 17, 2018 through December 19, 2018.

79.     On October 23, 2019, Plaintiff made a third request for all recordings from the Detention Center from December 17, 2018 through December 19, 2018.

80.     Plaintiff has a property interest or right in the evidence he asked be preserved and produced, and such evidence is important proof of his claims for injury.

81.     No video surveillance or other recordings have been produced in response to Plaintiff's requests for such evidence.

82.     On information and belief, video and possibly other recordings from the Detention Center from December 17, 2018 through December 19, 2018 existed, and could have been preserved and timely produced.

83.     On or about December 11, 2020, Plaintiff was informed by Angie Womack that video requested by Plaintiff from the Detention Center existed at one time, but had been destroyed approximately three months prior to December 11, 2020.

84.     Defendants have produced certain documents related to Plaintiff's incarceration from December 17, 2018 through December 19, 2018.

85.     The last time Defendants produced documents related to Plaintiff's incarceration from December 17, 2018 through December 19, 2018 was on or about December 14, 2020. Such production did not include any video or recordings from the Detention Center.

86.     On information and belief, Defendants intentionally failed to preserve, lost or destroyed, and failed to produce video as requested multiple times by Plaintiff in an intentional effort to conceal the attacks that occurred while Plaintiff was incarcerated at the Detention Center from December 17, 2018 through December 19, 2018, and to frustrate Plaintiff's ability to pursue claims for the injuries he sustained.

87.     Plaintiff has suffered and will continue to suffer damages because of the failure to preserve, destruction of, and/or failure to produce the video and possibly other evidence from the Detention Center.

## COUNT IV: NEGLIGENT SPOLIATION OF EVIDENCE

88.     All allegations are hereby incorporated as if fully set forth herein.

89.     As an alternative theory of recovery, Defendants' failure to preserve, loss or destruction, and/or failure to produce video surveillance and other evidence from the Detention Center from December 17, 2018 through December 19, 2018 constitutes a negligent spoliation of evidence.

90.     Plaintiff has suffered and will continue to suffer damages because of the failure to preserve, destruction of, and/or failure to produce the video and possibly other evidence from the Detention Center.

## COUNT V - SECTION 1983 CLAIM FOR DENIAL OF ACCESS TO COURTS

91.     All allegations are hereby incorporated as if fully set forth herein.

92.     The failure to preserve, the loss and/or destruction of, and the failure to produce video surveillance and possibly other evidence requested by Plaintiff constitute acts preformed under color of law, have effectively denied Plaintiff of important evidence of his claims, and by extension to Plaintiff's access to the Courts.

93.     Such constitutes a violation of Plaintiff's due process rights under the Fourteenth Amendment of the United States Constitution and/or Article II, Sec. 18, of the New Mexico Constitution.

94.     Defendants were on notice that their acts constitute a deprivation of Plaintiff's Constitutional rights.

95.     As a direct and proximate cause of Defendants' actions, Plaintiff's access to the Courts has been harmed.

96.     Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for their willful disregard of Plaintiff's federally secured due process rights.

## COUNT VI – SECTION 1983 CLAIM FOR COVER UP BY COUNTY EMPLOYEES

97.     All allegations are hereby incorporated as if fully set forth herein.

98.     Defendants' actions as otherwise alleged herein in covering up the use of the excessive force, including through the destruction of evidence and/or failure to preserve and produced evidence, were performed under color of law, and violated Plaintiff's rights to due process under the Fourteenth Amendment of the United States Constitution.

99.     Defendants were on notice that their acts constitute a deprivation of Plaintiff's Constitutional rights.

100.    Defendants' acts or omissions in covering up the use of the excessive force, including through the destruction of evidence and/or failure to preserve and produced evidence, caused serious and ongoing physical and psychological injuries to Plaintiff.

101.    Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for their willful disregard of Plaintiff's federally secured due process rights.

WHEREFORE Plaintiff respectfully seeks a judgment against all Defendants for compensatory damages, statutory damages, punitive damages, pre-judgment and post-judgment interest, court costs, attorney's fees, and for such other and further relief as the Court deems just and proper.

Respectfully submitted by:

JACKSON LAW, LLC

Wesley C. Jackson
*Attorney for Plaintiff*
1121 4th Street NW, Suite 1-A
Albuquerque, NM 87102
Office: (505) 881-7676; Fax: (505) 998-6603
Email: wes@legalactionnm.com